| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email address | FOR COURT USE ONLY |
|---|---|
| **Rabin J. Pournazarian 186735**<br>**Price Law Group, APC**<br>**6345 Balboa Blvd. Suite 247**<br>**Encino, CA 91316**<br>**818-995-4540 Fax: 818-995-9277**<br>California State Bar Number: **186735 CA**<br>rabin@pricelawgroup.com | |

☐ *Individual appearing without attorney*
☑ *Attorney for:* Debtor

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re<br>**Kalani James Robert Green**<br><div align=right>Debtor(s).</div> | CASE NO.: **8:21-bk-12425-MH**<br>CHAPTER 13 |
|---|---|
| | **MOTION UNDER LBR 3015-1(n) AND (w) TO MODIFY PLAN OR SUSPEND PLAN PAYMENTS** |
| | [No Hearing Required] |

1. The Debtor hereby moves this court to modify the confirmed Chapter 13 Plan or suspend plan payments, as set forth in detail below.

2. The purpose of this motion is to (***check all that apply***):
   ☑ Cure the delinquency.
   ☐ Address the expiration of the plan.
   ☐ Cure the infeasibility of the plan.
   ☑ Modify the amount of the plan payment, the length of the plan and/or the percentage to be paid to unsecured creditors because of a change in financial circumstances.

3. Terms of original confirmed Chapter 13 plan:
   The Order Confirming Plan was entered on  **1/19/2022**  .
   Plan payment amount(s): $ **1,500**  per month for months 1-12, then $3,077.00 per month for months 13-60.
   Length of plan:  **60**  months.
   Percentage paid to Class 5 general unsecured creditors:  **100** %.

4. There have been  **0**  previous modification or suspension orders.
   Plan payments have been suspended for __ months and/or the plan has been extended for __ months.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

5. Current plan terms *(complete this section if the confirmed chapter 13 plan has been subject to a previous modification or suspension order)*:

Plan payment amount(s): $___ per month.

Length of plan: ___ months.

Percentage paid to Class 5 general unsecured creditors: ___%.

6. Proposed modification:

[✓] Suspend (*indicate number of plan payments*) **7** plan payments.

[ ] Extend the term by (*indicate number of months*) __ month(s).

[ ] Reduce the term by (*indicate number of months*) __ month(s).

[✓] Increase the plan payment from $ **3,077.00** to $ **$3,376.00** from (*date*) **January 2023 (month 15)** to (*date*) **end of plan (month 60)** .

[ ] Reduce the plan payment from $___ to $___ from (*date*) _____ to (*date*) _____.

7. Since the Order Confirming Plan or the last modification or suspension order was entered, the debtor's(s') circumstances have changed in the following respect:

*The Debtor intends to sell his real property. PLease find his listing agreement attached as Exhibit "A". The Debtor intends to pay his bankruptcy in full with the proceeds.*

*The Debtor respectfully requests the suspension of his delinquency. The Debtor is also requesting that his plan payments be suspended until December 2022, to give him time to sell the real property. If the Debtor is unable to sell the real property by December 2022, plan payments to resume January 2023, at $3,376.00 per month. The percentage to unsecured creditors to remain at 100%.*

8. If this motion is granted, the last plan payment due would be payable **60** months after the first plan payment was due.

9. If this motion is granted:

[✓] There will be no change in the percentage paid to Class 5 general unsecured creditors,

OR

[ ] The percentage paid to Class 5 general unsecured creditors will change from __% to __%.

Date: _____

/s/ Rabin J. Pournazarian

**Rabin J. Pournazarian 180735**

Attorney for Debtor

I declare under penalty of perjury that the following is true and correct.

Date: **09/20/2022**

**Kalani James Robert Green**

Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "A"

# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
### (C.A.R. Form RLA, Revised 6/22)

**Date Prepared:** 09/13/2022

1. **EXCLUSIVE RIGHT TO SELL:** _____ Kalani Green _____ ("Seller")
hereby employs and grants _____ HLS Group, Inc. _____ ("Broker")
beginning (date) __September 13, 2022__ and ending at 11:59 P.M. on (date) __May 13, 2023__ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as __16411 Martin Ln__
_____, situated in __Huntington Beach__ (City),
__Orange__ (County), California, __92649-1831__ (Zip Code), Assessor's Parcel No. __936-291-34__ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional
terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing
Addendum and Advisory (C.A.R. Form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: __Nine Hundred Thousand__ _____ Dollars ($ __900,000.00__ ).
   **B.** Listing Terms: _____

3. **COMPENSATION TO BROKER:**
**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker
individually and may be negotiable between Seller and Broker (real estate commissions include all
compensation and fees to Broker).**
   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ __4.000__ percent
   of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, as follows:
   AND
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready,
   willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the
   Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any
   escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this
   Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property
   to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property
   during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating
   broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller,
   however, shall have no obligation to Broker under **paragraph 3A(2)** unless, not later than the end of the Listing Period
   or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise
   transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would
   have been earned under **paragraph 3A** shall be payable only if and when Seller collects damages by suit, arbitration, settlement
   or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after
   first deducting title and escrow expenses and the expenses of collection, if any.
   **C.** In addition, Seller agrees to pay Broker: _____
   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s)
   ("MLS") by offering to MLS brokers out of Broker's compensation specified in **paragraph 3A,** either ☐ _____ percent
   of the purchase price, or ☐ $ _____.
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
   submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 3A,** to any escrow regarding the Property
   involving Seller and a buyer, Prospective Buyer or other transferee.
   **F.** (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
   unless specified as follows: _____
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
   Property is transferred to any of the following individuals or entities: _____
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker
   is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such
   transaction.

© 2022, California Association of REALTORS®, Inc.

**RLA REVISED 6/22 (PAGE 1 OF 5)**

Seller's Initials _K.G._ _____

HLS Group, Inc., 1611 Pomona Road, suite 205 Corona CA 92880       Phone: 951.898.1125       Fax: 951.898.1135       Kalani Green
Ralph Schiavone                           Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Date: *09/13/2022*

Property Address: *16411 Martin Ln, Huntington Beach, CA  92649-1831*

**4.** **A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.

ADDITIONAL ITEMS EXCLUDED: *all personal property*

ADDITIONAL ITEMS INCLUDED:

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **(1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.** **MULTIPLE LISTING SERVICE:**
**A.** **WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in paragraph 7, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B.** **WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C.** **WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____*CRMLS*_____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

**6.** **BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A.** **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B.** **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C.** **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D.** **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

Seller's Initials  *R G*  /             Broker's/Agent's Initials  _____

**7.** **PUBLIC MARKETING OF PROPERTY:**
**A.** **CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see paragraph 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B.** **PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C.** **"COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
**D.** **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
(1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

RLA REVISED 6/22 (PAGE 2 OF 5)

Seller's Initials  *K G*  /  _____

Property Address: *16411 Martin Ln, Huntington Beach, CA 92649-1831*

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.** **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), **7B, 7D** and **7E** do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**8.** **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**A.** **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**B.** **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**9.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**10.** **BROKER'S AND SELLER'S DUTIES:**

**A.** **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in **10E** as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** **Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

**C.** **Buyer Supplemental Offer Letters (Buyer Letters):**

(1) **Paragraph 8 of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)** attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) (A) **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.** **Investigations and Reports:** Seller agrees, within 5 (or _____) Days of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other _____.
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**11.** **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

Seller's Initials *KG* / _____

Property Address: *16411 Martin Ln, Huntington Beach, CA 92649-1831*

## 12. AGENCY RELATIONSHIPS:

**A.** DISCLOSURE: The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B.** SELLER REPRESENTATION: Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**

**C.** POSSIBLE DUAL AGENCY WITH BUYER: Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D.** CONFIRMATION: Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**E.** POTENTIALLY COMPETING SELLERS AND BUYERS: Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**F.** TERMINATION OF AGENCY RELATIONSHIP: Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

## 13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO: Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

## 14. PHOTOGRAPHS AND INTERNET ADVERTISING:

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the use of the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

## 15. KEYSAFE/LOCKBOX: A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

**A.** Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

**B.** TENANT-OCCUPIED PROPERTY: If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

## 16. SIGN: Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

## 17. EQUAL HOUSING OPPORTUNITY: The Property is offered in compliance with federal, state and local anti-discrimination laws.

## 18. ATTORNEY FEES: In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker each are responsible for paying their own attorney's fees and costs, except as otherwise specified in **paragraph 22A.**

## 19. ADDITIONAL TERMS: ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

## 20. MANAGEMENT APPROVAL: If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

## 21. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon Seller and Seller's successors and assigns.

## 22. DISPUTE RESOLUTION:

RLA REVISED 6/22 (PAGE 4 OF 5)                    Seller's Initials  $K.S.$  _____

 Kalani Green



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**6345 Balboa Blvd. Suite 247**
**Encino, CA 91316**

A true and correct copy of the foregoing document entitled (*specify*):   **Motion Under Local Bankruptcy Rule 3015-1(n) and (w) To Modify Plan or Suspend Plan Payments**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  9/21/2022 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**CHAPTER 13 TRUSTEE: Amrane (SA) Cohen (TR),   efile@ch13ac.com**
**ATTORNEY FOR DEBTOR: Rabin J Pournazarian, enotice@pricelawgroup.com**
**UNITED STATES TRUSTEE (SA), ustpregion16.sa.ecf@usdoj.gov**
**ATTORNEY FOR CREDITOR: Dane Exnowski, dane.exnowski@mccalla.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  9/21/2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/21/2022 | Ashley Johnson | /s/ Ashley Johnson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                          Page 3                          **F 3015-1.05.MOTION.MODIFY.SUSPEND**

Label Matrix for local noticing
0973-8
Case 8:21-bk-12425-MH
Central District of California
Santa Ana
Wed Sep 21 07:12:50 PDT 2022

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

800 Loan Mart
15821 Ventura Blvd., Suite 185
Encino, CA 91436-4799

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

Ashley Funding Services, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Broadmoor Huntington Harbor Com. As
C/O Powerstone Property Management
9060 Irvine Center Drive, Suite 200
Irvine, CA 92618-4623

Broadmoor Huntington Harbour Community Assoc
c/o Powerstone Property Management
9060 Irvine Center Drive, #200
Irvine, CA 92618-4623

Capital One Auto Finance
7933 Preston Road
Plano, TX 75024-2302

Capital One Bank
P.O. Box 60599
City of Industry, CA 91716-0599

Capital One Bank (USA), N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC  28272-1083

Cavalry SPV I, LLC
500 Summit Lake Drive, Ste 400
Valhalla, NY 10595-2321

Credit One Bank
PO Box 98873
Las Vegas, NV 89193-8873

Credit One Bank
Post office Box 98872
Las Vegas, NV 89193-8872

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

FSB Blaze
5501 S Broadband Lane
Sioux Falls, SD 57108-2253

Franchise Tax Board
Bankruptcy Section MS A340
Attn Bankruptcy
Post Office Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Medical Payment Data
P.O. Box 9500
Wilkes Barre, PA 18773-9500

NewRez LLC DBA Shellpoint Mortgage Servicing
Bankruptcy Department
PO Box 10826
Greenville, SC 29603-0826

SCE
P.O. Box 750
Rosemead, CA 91770

Shellpoint Mortgage
55 Beattie Pl #500
Greenville, SC 29601-5116

State of California
Vehicle Registration Collections
Franchise Tax Board
P.O. Box 419001
Rancho Cordova, CA 95741-9001

The Mortgage Law Firm, PLC
27455 Tierra Alta Way, Ste. B
TSN:147147
Temecula, CA 92590-3498

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Wheels Financial Group, LLC dba 1-800LoanMar
15400 Sherman Way, Ste. 300
Van Nuys, CA 91406-4272

Amrane (SA) Cohen (TR)
770 The City Drive South Suite 3700
Orange, CA 92868-4928

Kalani James Robert Green
16411 Martin Lane
Huntington Beach, CA 92649-1831

Rabin J. Pournazarian
6345 Balboa Blvd., Suite 247
Encino, CA 91316-1580

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)WIlmington Savings Fund Society, FSB | (d)State of California | End of Label Matrix |
| | Vehicle Registration Collections | Mailable recipients    28 |
| | Franchise Tax Board | Bypassed recipients     2 |
| | PO Box 419001 | Total                  30 |
| | Rancho Cordova, CA 95741-9001 | |